## HARTFORD LIFE - GBD - EMPLOYEE PERFORMANCE APPRAISAL

**Name: Chris** ▉▉▉
**Department: BMS**

**Title: Clinical case**
**Manager – Rehab**
**Last Appraisal Date:**
**2002**

**Date in Job:**
**Appraisal Period : 1/03 –**
**12/03**

**This Appraisal Date:**
**2/24/04**

| Objectives: | Results: |
|---|---|
| Write objectives that relate to the duties and key results expected of the position. | For each objective, briefly describe the employee's achievements during the appraisal period. |
| **Provide high quality Rehabilitative Clinical Case Management (RCCM) assessment and liability assistance:**<br><br>• Review pertinent claim information to develop appropriate, thorough individual case management plans that facilitate employee return to work, or work readiness.<br>• Assist field office staff and appeals staff with initial and ongoing claim determinations by providing Occupational Analysis (OA), Employability Analysis Reports (EAR), Vocational Assessments. Maintain mail/diary inventory within standard.<br><br>Successful achievement of the objective is measured by:<br><br>➢ Meeting/exceeding the 90% QA standard<br>➢ TAT - Initial assessments/ongoing evaluations completed with 10 days for RCCM, 5 days for liability assistance.<br>➢ Team Leader/management/consultant file reviews | Chris achieved an overall QA score of 94%. QA reviews demonstrate a clear understanding of policies and procedures and a focus on effective and cost efficient claims management. Chris consistently performs reviews utilizing a proactive approach, identifying evidence-based R/L, functional abilities and barriers to RTW outcomes. She maintains TAT for diary and mail within the standard almost 100% of the time. She received approx. 1017 new referrals for 2003, with an average caseload of 61. Chris completed 72 EAR's (21%) and 624 OA's (22%) for the team. |
| **Demonstrate Technical/Professional knowledge to assist with the effective management of assigned/referred claims.**<br><br>• Technical – Demonstrate understanding of STD/LTD policy language, including but not limited to ability vs. non ability, residual and partial benefits, Test Change, ASO vs. Fully Insured and apply this knowledge to produce outcome driven case management.<br><br>• Professional – Provide appropriate Rehab case management based on factors such as physical capabilities and/or transferable skills, which focuses on improving the claimant's functional abilities and/or assisting in RTW outcomes. | Chris demonstrates a comprehensive understanding of all rehab policies and procedures, enabling her to render accurate and timely assessments. She is easily approachable and provides information and technical support to CE and teammates. Chris' abilities are extremely valuable to this organization. As an example of her efficiency, she was promoted to a Level III RCCM, in June, 2003. She has numerous success stories which verify her commitment to excellence in claims management. She has shared these stories with marketing to promote customer communication and satisfaction. |

PLAINTIFF EX. K, p. 1

HAR 2993

| | |
|---|---|
| Effectively communicate within and outside company to clarify claimant abilities, negotiate and implement RTW plans.<br><br>Success achievement will be evidenced by:<br><br>➢ Team Leader/management/consultant file reviews<br>➢ Meeting/exceeding 90% QA standard<br>➢ TAT as follow up activities occur, but no less than updates every 30 days<br>➢ Written documentation in letters and DCS<br>➢ Submission of a minimum of 2 success stories (submitted quarterly) | 18 RTW (AP) |
| **Facilitate outcome driven claim management plans through effective interactions with providers, claimants, policyholders and vendors.**<br><br>• Documentation is clear and concise and reflects strong technical and clinical knowledge as well as effective communications skills. Keep all parties informed on claim matters, handle inquires and responds to/or directs complaints in a timely and professional manner.<br><br>Success will be evidenced by:<br><br>➢ Meeting/exceeding 90% QA standard<br>➢ Team Leader/management file reviews<br>➢ As evidenced by examiner/customer surveys and feedback | Chris achieved a total of 18 RTW, and 6 RTW ER not accommodating. This represents an average of 32% of the rccm total of 47. She achieved 46 functional caps, or 22% of the team's total of 211. Her activities realized a cost savings of approx. $4,062,185.00 for the team. |
| **Training and Development –**<br><br>• Identify needs and provide timely feedback to management. Provide formal and informal training to claim staff to improve overall business results as directed. Training will be delivered through one on one sessions, claim discussions, team meetings and other venues as appropriate. Ensure Hartford life's claim management model has a focus on functionality vs. diagnosis.<br><br>This is measured by:<br><br>➢ Management review of training sessions<br>➢ Multi-source feedback<br>➢ Review of training materials developed, management review of training sessions | Chris coordinated an initiative to re-train LTD CE's on the EAR/TSA process. She has volunteered to be a member of the clinical ad hoc committee on Abilities Language. She assists the LTD trainer with new examiners, to clarify the rehab process and procedures. |
| **Vendor Management –** | Chris is very efficient in her utilization of outside vendors. When necessary, she contracts for |

PLAINTIFF EX. K, p. 2

HAR 2994

| | |
|---|---|
| • Provide effective vendor management when assessing or managing claims. This includes the utilization of vendors, the timing of vendor use, cost/benefit analysis; selection of vendor type; and the questions the vendor is asked to clarify or address. Openly communicates with management as to the effectiveness of preferred vendors [e.g. quality of service, TAT, value delivered, completeness of request fulfillment, etc.].<br><br>This is measured by:<br><br>➢ Meet/exceed 90% QA standard<br>➢ Vendor referral form and/or letter<br>➢ Written documentation in claim file or DCS comments<br>➢ Multi-source feedback | services utilizing an approach that ensures the efficiency and cost effectiveness of the venture. |

PLAINTIFF EX. K, p. 3

HAR 2995

*COMPENTENCIES AND BEHAVIORS THAT IMPACT ACHIEVEMENT OF OBJECTIVES*

| Identification of Competencies: | Observed Behaviors: |
|---|---|
| Identify and describe each competency that is critical to the successful achievement of objectives. | Describe behaviors you have observed, as they relate to each competency, that either lead to successes achieved or that may have inhibited success. |
| **Customer Orientation**<br>• Values Customers<br>• Maintains Quality<br>• Dedicated to Excellence<br>• Timely Service | Chris consistently focuses on customer satisfaction for both internal and external clients. She is dedicated to continuous quality improvement for both herself and the Hartford. |
| **Business & Organizational Knowledge**<br>• Organizational Knowledge<br>• Job Knowledge<br>• Big Picture Oriented | Chris demonstrates a clear understanding of all rehab policies and procedures, as demonstrated by her accurate and timely handling of the claims management process. |
| **Taking Ownership**<br>• Accountability<br>• Motivation<br>• Action Oriented<br>• End-Result Focused | Chris is consistently accountable and responsible for her actions and decisions. She is self-motivated and self-directed. She is able to articulate the "big picture" and is therefore, end-focused. |
| **Communication**<br>• Fosters Open Communication<br>• Shares Information<br>• Oral and written Communication | Chris effectively communicates in both written and verbal venues. She readily shares information with the CE's and her peers, to maintain timely claims processing. |
| **Personal Effectiveness**<br>• Integrity<br>• Professionalism<br>• Personal Organization<br>• Time Management<br>• Effective Interpersonal Skills | Chris is always professional in her interactions with customers, staff and peers. She is well organized and is able to render timely and accurate claims decisions. She is easily approachable. |
| **Develops Self**<br>• Continuous Learning<br>• Seeks Development Opportunities<br>• Maintain professional credentials | Chris maintains her professional licenses as per Hartford policy. She also took a work station assessment and ergonomics course and completes these assessments in our office, as needed. |

*PERFORMANCE SUMMARY*

- 4 -

PLAINTIFF EX. K, p. 4

HAR 2996

## Performance Summary

Chris has shown a consistent effort to work within the process of continuous quality improvement for herself and the Hartford. She is committed to excellence in rehabilitation and case management. She is customer focused, with both internal and external clients. She has been a mentor and support to the team.

(x) Indicates the overall level of performance achieved by this employee during this annual evaluation period.

_____ Does not meet expectations          _____ Partially Meets Expectations

_____ Meets Expectations          __x___ Exceeds Expectations

_____ Far Exceeds Expectations

Signatures

Employee: _____          Date: 2/27/04
Supervisor: _____          Date: 2/27/04

The employee's signature here indicates that he/she has read and has discussed it with their supervisor. It does not imply agreement with the content. Employees should feel free to add comments for the record.

PLAINTIFF EX. K, p. 5

HAR 2997

### *HARTFORD LIFE - GBD - EMPLOYEE PERFORMANCE APPRAISAL*

| | | | |
|---|---|---|---|
| **Name:** | Christina ▮ | **Date in Job:** | |
| **Department:** | BMS | **Appraisal Period:** | 2002 |
| **Title: Clinical Case Manager - Rehab** | | | |
| **Last Appraisal Date:** | 03/02 | **This Appraisal Date:** | 02/28/03 |

| Objectives | Results |
|---|---|
| Write objectives that relate to the duties and key results expected of the position. | For each objective, briefly describe the employee's achievements during the appraisal period. |
| **Provide high quality Rehabilitative Clinical Case Management (RCCM) assessment and liability assistance:**<br><br>• Review pertinent claim information to develop appropriate, thorough individual case management plans that facilitate employee return to work, or work readiness.<br>• Assist field office staff and appeals staff with initial and ongoing claim determinations by providing Occupational Analysis (OA), Employability Analysis Reports (EAR), Vocational Assessments. Maintain mail/diary inventory within standard.<br><br>Successful achievement of the objective is measured by:<br><br>➢ Meeting/exceeding the 90% QA standard<br>➢ TAT - Initial assessments/ongoing evaluations completed with 10 days for RCCM, 5 days for liability assistance.<br>➢ Team Leader/management/consultant file reviews | Chris achieved an overall quality score of 92% during 2002. This was above the quality standard of 90% and the office average of 85%. Feedback from the quality reviewer indicated that she needed to fully document all her actions in the DCS case comments. Also, she needed to be sure to document her actions in COT. Chris provided good assessments and demonstrated strong case management skills.<br>Chris assisted her team by performing OA's and EAR's when referred. She worked well with the MCCM and they often discussed files and referred them to each other.<br>Chris had diaries over the 5 day standard through out the year. She averaged 10 diaries per month over the standard, which equated to 34%. She received an average of 46 new referrals per month and averaged a monthly caseload of 68. Some of the backlog was due to the fluctuations of staff in the beginning of the year. |
| **Demonstrate Technical/Professional knowledge to assist with the effective management of assigned/referred claims.**<br><br>• Technical – Demonstrate understanding of STD/LTD policy language, including but not limited to ability vs. non ability, residual and partial benefits, Test Change, ASO vs. Fully Insured and apply this knowledge to produce outcome driven case management.<br><br>• Professional – Provide appropriate Rehab case management based on factors such as physical capabilities and/or transferable skills, which focuses on improving the claimants functional abilities and/or assisting in RTW outcomes. Effectively communicate within and outside | Chris fully understood the LTD plan/policy language. She received training on the abilities and non-abilities language and applied them in her rehab plans and assessments. Chris also assisted the STD staff, when needed.<br>Based on her quality scores and feedback from the quality reviewer, Chris provided appropriate rehab case management. Her outcomes reflect her ability to review files effectively and work with claimants to return them to a functional lifestyle.<br>Chris effectively communicated with staff however can be over zealous at times. She needed to balance her quest for efficiency and sharing to influence her peers and not being perceived as dominating. |

PLAINTIFF EX. K, p. 6

HAR 2998

| | |
|---|---|
| company to clarify claimant abilities, negotiate and implement RTW plans.<br><br>Success achievement will be evidenced by:<br><br>➢ Team Leader/management/consultant file reviews<br>➢ Meeting/exceeding 90% QA standard<br>➢ TAT as follow up activities occur, but no less than updates every 30 days<br>➢ Written documentation in letters and DCS<br>➢ Submission of a minimum of 2 success stories (submitted quarterly) | |
| **Facilitate outcome driven claim management plans through effective interactions with providers, claimants, policyholders and vendors.**<br><br>• Documentation is clear and concise and reflects strong technical and clinical knowledge as well as effective communications skills. Keep all parties informed on claim matters, handle inquires and responds to/or directs complaints in a timely and professional manner.<br><br>Success will be evidenced by:<br><br>➢ Meeting/exceeding 90% QA standard<br>➢ Team Leader/management file reviews<br>➢ As evidenced by examiner/customer surveys and feedback | Chris achieved a total of 11 return to works, which represented 26% of the office total and 4%of the network. In addition, she achieved 40 functional capabilities present, which was 16% of the office total and 2% of the network. Her total dollar savings were $3,131,224, which was 17% of the office and 3% of the network.<br>Chris provided clear documentation and good case management skills. Due to fluctuations in the RCCM team, Chris handled higher caseloads at times but worked diligently to bring them to an acceptable level. She conducted herself in a professional manner and worked well with her MCCM partner. |
| **Training and Development –**<br><br>• Identify needs and provide timely feedback to management. Provide formal and informal training to claim staff to improve overall business results as directed. Training will be delivered through one on one sessions, claim discussions, team meetings and other venues as appropriate. Ensure Hartford life's claim management model has a focus on functionality vs. diagnosis.<br><br>This is measured by:<br><br>➢ Management review of training sessions<br>➢ Multi-source feedback<br>➢ Review of training materials developed, management review of training sessions | Chris worked with her team on an individual basis to coach and develop their skills. She was selected to provide training to the new members of the presentation team, and did so in an effective manner. She and her peers did not provide any formal training to the staff in 2002. Chris participated in team meetings and discussions and assisted the examiners with ongoing case management plans. |
| **Vendor Management –**<br><br>• Provide effective vendor management when | The quality reviewer did not provide comment with regards to Chris' vendor management. Files I reviewed indicated varying degrees of vendor |

- 2 -

PLAINTIFF EX. K, p. 7

HAR 2999

| | |
|---|---|
| assessing or managing claims. This includes the utilization of vendors, the timing of vendor use, cost/benefit analysis; selection of vendor type; and the questions the vendor is asked to clarify or address. Openly communicates with management as to the effectiveness of preferred vendors [e.g. quality of service, TAT, value delivered, completeness of request fulfillment, etc.].<br><br>This is measured by:<br><br>➤ Meet/exceed 90% QA standard<br>➤ Vendor referral form and/or letter<br>➤ Written documentation in claim file or DCS comments<br>➤ Multi-source feedback | involvement. She tended to vend out more cases when the backlog was high. Chris can tighten up controls on vendors by setting clear expectations with deadlines and following up in an aggressive manner. Chris understood the need to manage vendors effectively to control expenses. |

PLAINTIFF EX. K, p. 8

HAR 3000

### *COMPETENCIES AND BEHAVIORS THAT IMPACT ACHIEVEMENT OF OBJECTIVES*

| Identification of Competencies | Observed Behaviors |
|---|---|
| Identify and describe each competency that is critical to the successful achievement of objectives. | Describe behaviors you have observed, as they relate to each competency, that either lead to successes achieved or that may have inhibited success. |
| **Customer Orientation**<br>• Values Customers<br>• Maintains Quality<br>• Dedicated to Excellence<br>• Timely Service | Chris provided good customer service to both external and internal customers.  She maintained her quality scores and provided timely service to the team she supported. |
| **Business & Organizational Knowledge**<br>• Organizational Knowledge<br>• Job Knowledge<br>• Big Picture Oriented | Chris fully understood her role and how it fit with the organizational objectives and goals.  She was focused on results and proactive in identifying rehab cases. |
| **Taking Ownership**<br>• Accountability<br>• Motivation<br>• Action Oriented<br>• End-Result Focused | Chris was a self-motivated individual who took responsibility for her caseload.  She was focused on results and worked her files with an end result in mind. |
| **Communication**<br>• Fosters Open Communication<br>• Shares Information<br>• Oral and written Communication | Chris communicated well with her team and peers.  At times, Chris tended to dominate rather than influence her team members.  She documented her files in a clear, concise manner. |
| **Personal Effectiveness**<br>• Integrity<br>• Professionalism<br>• Personal Organization<br>• Time Management<br>• Effective Interpersonal Skills | Chris conducted herself in a professional manner and demonstrated Integrity.  She was organized and was effective in her time management skills and recognized which areas to place her efforts to work effectively. |
| **Develops Self**<br>• Continuous Learning<br>• Seeks Development Opportunities<br>• Maintain professional credentials | Chris maintained her professional credentials.  She sought out opportunities to develop herself and share information with her peers.  Chris kept abreast of new information in her field of expertise. |

PLAINTIFF EX. K, p. 9

HAR 3001

## *PERFORMANCE SUMMARY*

Describe overall performance in regard to objectives and critical competencies:

Chris provided a sound, quality performance in 2002. She attained a good quality score and outcomes for the office. She contributed on an individual and team basis to achieve the objectives and goals for the office. Chris provided training to examiners on an individual basis and was selected to provide training to other office staff and visitors. She was proactive in identifying opportunities to increase rehab case management. She will work toward her goal of promotion to a Case Manager III level in 2003.

Indicate (X) the overall level of performance achieved by the employee during the performance period:

| | X | |
|---|---|---|
| Exceptional | Quality Performance | Needs Improvement |

---

**Signatures:**

Expectations
Established

Employee: _____  Date: _____

Supervisor: _____  Date: _____

Final
Appraisal **

Employee: *Chris* ▮▮▮▮  Date: 2/28/03

Supervisor: *Allic Eyre*  Date: 2 28 03

Next Level Supervisor _____  Date: _____

** The employee's signature here indicates that he/she has read the document and has discussed it with his/her immediate supervisor. It does not imply agreement with the content. Employees should feel free to add comments for the record.

- 5 -

PLAINTIFF EX. K, p. 10

HAR 3002

## Clinical Quality Assurance Worksheet
### REHAB CASE MANAGEMENT

**Date**  5/27/03            **Claim Office** SYRACUSE           **Clinical Staff** CHRIS
**Policy holder**   waste holdings
**Claimant** ███████        **SSN#** ███████
**Reviewer:** splasse

### COMPETENCY                                    COMMENTS

| Claim | Management Process: | Score | Comments |
|---|---|---|---|
| **_Initial Evaluation_**<br>[weight-30%] | • Purpose of referral noted | Y | |
| | • focus on EE's functional ability, and possible accommodations | Y | |
| | • identify employer's ability to provide job accommodations | Y | |
| | • psycho-social issues/motivation noted | / | |
| | • education/ transferable skills assessed | Y | |
| | • estimate EE's expected functional improvement related to employability | n | I cannot agree with your findings that this 35yo is too severe to consider for rehab. With abilities policy, retrng for sed occ that will allow for positional changes is even consideration, and would be less costly than just paying 1.5 yrs of benefits without trying anything. with this assessment how could t/c decision be any different? So we've bought claim for another 30yrs? |
| | • evaluation includes next action steps, rationale and estimated time frame | / | |
| | • 3 point contact made, or if not, rationale as to why | / | |
| | • Turnaround time met [10 days] | y | |
| **_Plan Development_**<br>[weight-15%] | • plan reflects skilled thought and consideration of functional demands of occupation and claimant | / | |
| | • realistic goals with RTW hierarchy considered and documented appropriately | / | |
| | • negotiation of plan and claimant participation documented | / | |
| | • projected time frames appropriate for facts of case known at this time | / | |
| **_Ongoing claim management:_**<br>[weight-10%] | • Focus on improving claimant's Employability | / | |
| | • follow-up done within appropriate time frames [in diary and/or Comments] | / | |
| | • Applied /followed Ability contract provisions and procedures | / | |
| | • reassess functional capabilities, as needed | / | |
| | • Transferable skills analyzed accurately | / | |
| | • Appropriate job match selection | / | |

HAR 3244

| Claim | Management Process | | Comments |
|---|---|---|---|
| *Resource/Vendor Management [weight-10%]* | • Center for Ability used and impact documented | / | |
| | • vendor referral, if necessary | / | |
| | • appropriate vendor type used [IME, FCE, Case Management, Medical Director] | / | |
| | • completed vendor referral form accurately | / | |
| | • appropriate vendor supervision [quality of service, TAT and cost-effectiveness] | / | |
| | • cost/benefit analysis evident in documentation [remember too little cost is just as poor as too much], including estimated expense and time frame | / | |
| **Documentation:** | | | |
| [weight-15%] | • Accurate use of Claim Outcome Tracking | Y Y | |
| | • ICD9 and/or CPT codes corrected | | |
| | • Documentation in Comments throughout case complete and clear | y | |
| **Outcomes:** | | | |
| [weight-20%] | • reflects improved employability and/or facilitated RTW | / | |
| | • final functional level of claimant noted | y | |
| | • provide suggestions for claim direction [i.e. case management, Social Security, settlement, etc.] | y | Though don't agree with your assessment [see previous comments] |
| **SUMMARY** | **COMMENTS:** | | |

PLAINTIFF EX. K, p. 12

HAR 3245

**EMPLOYEE PERFORMANCE APPRAISAL FORM**                    **The Hartford**

**Interim Review – January – June 2006**

| EMPLOYEE NAME | SOCIAL SECURITY NUMBER | JOB CODE | DATE IN JOB 7/13/98 |
|---|---|---|---|
| Chris | | | |
| **POSITION TITLE** | **DEPARTMENT** | **OFFICE LOCATION** | **HRMS I.D.** |
| Rehabilitation Clinical Case Manager III | BMS Operations | Syracuse | |

**Objectives:**
During this period Chris maintained her mail & diary within the 5 day standard per backlog reports. She had one month with unprocessed referrals over the 5 day standard. Chris was placed on a verbal warning in April for moving diaries without working on the file which skews TAT.  There were six months of quality assurance file reviews, which Chris achieved an average of 99.1%, which is above the standard of 95% for a CCM III.

Chris received an average of 31 new B/C triage referrals each month were the target is 20 to 25.  She received 3.7 OA's which is within the target of 3-7 per month and 8.8 EAR's per month which is below the target of 10-15 per month. Chris added an average of 15.2 new case management referrals which is within the target range of 10-18 per month.

Chris volunteered to be a member on the Editorial Board network project.  She also developed cheat sheets for the claim examiners to make the referral process easier and acted as a clinical representative at the weekly meetings of the specialty team.

**Core Competencies:**
Chris participated in the State of Delaware presentation here in Syracuse.  She communicated well and received good feedback.  Positive feedback was also received from external customers as well as claim staff regarding her RTW efforts with claimants.

Chris was also placed on verbal warning in April for reviewing teammate's diaries and discussion their backlog, creating a hostile work environment for her teammates and sharing her compensation information with coworkers.

Overall, Chris was end result focused which was demonstrated by her productivity and outcomes.  She worked well with examiners and took the extra step of discussing files and educating them, when necessary. Chris will need to work on developing trust with the clinical team and improving her relationship with team members.

HAR 3340

**Overall Rating:__Meets  Expectations**_____

**Employee:** _Chris_ ████ _____**Date:** _9/8/06_

**Team Leader:** _____**Date:**_____

☆ please see attached 4 page response

Chris
Sleuh

HAR 3341

I have given my Interim review a lot of thought over the past week and I appreciate being given the time to put some thoughts down in writing. I was surprised to learn, on my way into the meeting that day, that my 1 on 1 was actually my interim review. In the past we have always been asked for input and had knowledge ahead of time that it was occurring.

My overall impression of my review was that it focused more on "numbers" and negative aspects, versus the positive things that I have contributed to the clinical team and The Hartford as a whole the first half of 2006.

As I indicated in my review, the biggest disappointment was that the verbal warning that I received in April was included in my review in two separate sections. At the time of the verbal warning, I was given the impression that it was just that, a verbal warning. The fact that it was mentioned, twice, in my brief interim review, implies that it is a written warning. My understanding from HR Source is that "normally, the manager will just make note of the conversation". In my review meeting you indicated that "it was over, have not heard that it was a further issue from anyone, and didn't expect it to be an issue in the future", however the choice was made to include it in my review twice. I can't help but to feel that it comes across as double punitive.

Although I did not agree with the verbal warning, I chose at the time not to respond because, among other reasons, I did not feel that it would be heard and that minds were already made up about what did or did not happen. Because it is included in my written review I feel that I have no choice but to now respond.

In regards to "Moving Diaries" addressed in the verbal warning and interim review; The definition of case management indicates that a file must be worked on within a 30 day period. Often times a telephone call or piece of mail comes in and you work a diary but forget to move the diary out. So, often times when I got to that diary, if I had worked it within that 30 days, and there was no reason to work it again, I would reset the diary for 30 days from when it was last touched. Prior to the verbal warning in April, I was never told that this practice was unacceptable. I am also aware, based on past discussions with more than 1 RCCM teammate, that this was also common practice for them.

In regards to "Reviewing teammate's diaries and discussion their backlog" addressed in the verbal warning and interim review:
We were in a clinical meeting and we were reviewing the MCCM backlog, as they were down staff. The RCCMs had been talking prior to the meeting and were discussing that they felt that emphasis was always placed on MCCM backlog and not RCCM backlog or assistance needed. The other RCCM involved in this issue mentioned in the clinical meeting that day that she was drowning and not able to keep up with her work. As her team member, I thought it was the right thing to do to talk with her alone, instead of drawing attention to it in a group setting. I told her that I was not aware that she was behind because she had not asked for help and our CTL had not asked us to help her. I mentioned to her that if she needed help, she should speak up in the meetings so everyone had a true picture of the RCCM backlog as well. The RCCM responded that she was having trouble keeping up with the EARs and was told by the CTL that she could put a

HAR 3342

comment in that diary that it would be done on such and such a date and reset the diary. The RCCM indicated that she did not agree with it, but that the CTL had told her that it was acceptable and would remember that she told her to do it at QA time.

In regards to "Creating a hostile work environment" addressed in the verbal warning and interim review:
I did not consider the above conversation hostile or that it created a hostile work environment because immediately following that same conversation, the RCCM presented me with a newspaper article that she had copied from the Sunday newspaper talking about stressful work environments and what supervisors/managers could do to support their employees. She indicated that she wanted to find a way to slip it under the doors/into the offices of the CTL, Director of Ops and VP. If I was feeling intimidated at that point I certainly wouldn't have continued the conversation in that manner.

In regards to "Sharing compensation information with coworkers" addressed in the verbal warning and interim review:
I shared the fact with one person only that I "meets expectations" and did not receive compensation *in response* to that coworker indicating to me that she did not receive any compensation after her review. Again, it would appear that not everyone is held to the same core competencies on an equal basis.

We have been advised in meetings, "communication inservices" by CTL, etc, that if we have an issue with a person in the office or on the team that we need to first approach that person in an attempt to resolve the issue. If it cannot be resolved among each other, it can then be escalated to supervisor/manager level. I asked at the time of the verbal warning, and again at my review, why was that process not respected in my circumstance? Why weren't any issues brought to me directly and why didn't management encourage or coach teammate(s) to do that? It would appear that not all members of the team are held to the same core competencies as others. If for whatever reason certain team members were not comfortable approaching me by themselves, I would have welcomed a meeting with that person and management. I asked that at the time of the warning and at my review, and was not given a response.

Part of working in a professional atmosphere is being able to approach other professionals and giving them the respect and opportunity to address and resolve issues before they escalate. It was mentioned in my review that sometimes people are afraid of "having their heads bitten off" when approaching each other about uncomfortable issues. I am not sure if this statement was directed at me, and I certainly do not recall "biting anyone's head off". On the contrary, I have been told on many occasions by examiners that I am very approachable. In addition, in my opinion this is not a reason to give people "permission" to bypass respect and communication of their peers.

As I also mentioned in my review, the other reason that I feel that I need to respond to the "verbal" warning and to my review is that I feel that I am always "walking on eggshells" and that I need to constantly defend my words, actions and my job. You responded that this is not the case. However, I have been told on several occasions that if I talk with

HAR 3343

anyone about any of the issues from my verbal warning, or other instances, that I will absolutely lose my job. My opinion is that intimidating and not allowing team members to talk/communicate about issues fosters a hostile work environment and prevents any ability to regain trust among a team.

In response to my numbers being below target for EARs; RCCMs continue to discuss with management that these numbers are generated by TC dates, and not something that we have complete control over. We continue to educate the office in many ways regarding proactive referrals, but continue to be below target for EARs/OAs, because again, we have minimum control over the number of referrals. I do not believe that this should be "punitive" and after discussion with the MN office, it appears that it is not for all offices. While I understand that we work for an insurance company and production is a reality, there is so much more to what we do than numbers and whether or not we meet them.

There are many, many core competencies that Hartford outlines for their employees. My review seemed to focus on the ones where it was felt that I am deficient. By no means am I above improving myself as an employee; however the overall tone of the review came across as focusing on the negative versus the positive.

With that said, I would like to share some of the positive things that I have contributed the first half of this year.

- Based on the COTS report printed on 6/11/06 I entered at least 13 full time rtws and 2 part time rtws (that went to FT). These outcomes were not included in my interim review and rtws are why RCCMs are at The Hartford!
- Despite significant vacation time for myself and teammates, I maintained a 1 day TAT for several weeks.
- Positive relationships with others members of the clinical team, LTD staff, sales and management team/TLs, other offices.
- Attend and participate in weekly SST team meetings
- Develop positive and mutually beneficial relationships with many employers
- Continued to mentor Angie
- Willing to go above and beyond to manage a claim, help a claimant, and "do the right thing".
- Ability to be very flexible and multitask in order to "get the job done".
- Sit with all examiner new hires to review RCCM duties.

Easter Seals for FMR; to avert a claim (see success story)
Impromptu tour with AIG-talked about a case I have with them.
Successes; Platz. Torres, FMR vision, Siciliano, HR ergo assist,
copied book for RCCM team
renewed CRC
Editorial board; surveyed office for modules, met twice, meeting with Gail to review
review process for modules
Assisted MCCM with calls

PLAINTIFF EX. K, p. 17

HAR 3344

Success for Karen █████
Success for Tracie █████
Success for Margaret █████
Began Editorial board
Assisted RCCM
Asked Durea if site # on screen would be helpful.  Yes, so recommended that we include that # on requests/emails to SOD rtw coord
Shared state of Del websites (legislation) with CTL

The purpose of this correspondence is to respond to the verbal warning and to my interim review.  Please attach this to my review, to be included in my personnel file.

Again, thank you for the opportunity to express my thoughts in writing.

Chris █████

9/8/06