Scott M. Riemer (SR 5005)
RIEMER & ASSOCIATES LLC
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SUSAN A. YOUNG,                                              09 CV 9811 (RJH) (THK)

                              Plaintiff,

        -against-

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY and CONTINENTAL
CASUALTY COMPANY,

                              Defendant.
----------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

Of Counsel:

Scott M. Riemer

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PREMILINARY STATEMENT ..............................................................................................1

ARGUMENT..............................................................................................................................2

   I.  HARTFORD'S DETERMATION IS NOT SUPPORTED BY
      SUBSTANTIAL EVIDENCE ...................................................................................2

         A.  DR. HIESIGER DOES NOT SUPPORT HARTFORD'S
            TERMINATION................................................................................................2

         B.  DR. TOPPER DOES NOT SUPPORT HARTFORD'S
            TERMINATION................................................................................................4

   II.  HARTFORD FAILED TO PROVIDE YOUNG WITH A FULL AND
       FAIR REVIEW ...........................................................................................................6

         A.  HARTFORD IMPROPERLY JUSTIFIES ITS TERMINATION
            OF YOUNG'S BENEFITS WITH NEW REASONS FOR
            DENIAL..............................................................................................................6

         B.  HARTFORD DID NOT GATHER READILY AVAILABLE
            INFORMATION................................................................................................8

   III. HARTFORD'S CONFLICT OF INTEREST WAS OF GREAT
        IMPORTANCE............................................................................................................8

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)..............................................4, 9, 10

*Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773 (8th Cir. 2009) ...............................8

*Curry v. American International Group*, 579 F. Supp.2d 413 (S.D.N.Y. 2008) *aff'd*, 341 Fed. Appx. 731 (2d Cir. 2009) ...............................................................................6

*Durakovic v. Building Service 32 BJ Pension Fund*, 609 F.3d 133 (2d Cir. 2010)...............10

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).................................................5

*Levitian v. Sun Life and Health Ins. Co. (U.S.)*, 2011 U.S. Dist. LEXIS 14113 (S.D.N.Y. Feb. 9, 2011) ...................................................................................................4

*Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478 (7th Cir. 2009) ....................................5

*Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 1343 (2008) .................................................10

*Miller v. American Airlines, Inc.*, 2011 U.S. App. LEXIS 1462 (3rd Cir. Jan. 25, 2011) .....................................................................................................4

PRELIMINARY STATEMENT

The central questions here are: (1) whether Young is disabled from her occupation as a transactional attorney as described in the Physical Demands Analysis (1055-56); and (2) whether Hartford's termination was arbitrary and capricious, *i.e.*, unsupported by substantial evidence. Both parties make numerous other arguments that add flavor and pertain to these issues, but ultimately these are the determinative issues.

It so happens that the same pieces of evidence answer both questions: the Attending Physician Statement of Dr. Hiesiger dated February 27, 2008 (431); the Attending Physician Statement of Dr. Hiesiger dated August 6, 2008 (375); the report of Dr. Hiesiger dated October 6, 2008 (339); and the report of Dr. Topper dated November 24, 2008 (318). With respect to the first question, <u>all</u> four establish that Young is disabled from her occupation as a transactional attorney. (See Young Br., p. 4-5; 12-13; Young Opp. Br., p. 7-8, 10-12). With respect to the second question, Hartford relies on Dr. Hiesiger's attending physician statements and the report of Dr. Topper, but because each of these in actuality supports a finding of disability, Hartford's termination is without substantial evidence. Hartford points to no other supporting piece of substantial evidence in either its August 27, 2008 termination letter (221) or its December 18, 2008 appeal denial (210).

Summary judgment should be entered in favor of Young because both of these questions must be answered in favor of Young, regardless of the merits of any other argument raised by Hartford (and Young concedes none of them). Moreover, because Young has presented convincing evidence that shows that the decision makers at Hartford may have had secondary motives that could have influenced the decision in Young's claim, the Court should review the questions with a heightened degree of scrutiny.

ARGUMENT

I. HARTFORD'S DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Summary judgment should be granted in favor of Young because Hartford's determination was not supported by substantial evidence. (See Young Br., p. 9-17; Young Opp. Br., pp. 9-14). In opposition, Hartford asserts that its termination of Young's benefits was supported by Drs. Hiesiger and Topper. (Hartford Opp., pp. 1-11). However, because neither doctor supports Hartford's termination of benefits, Hartford's determination was arbitrary and capricious.

A. DR. HIESIGER DOES NOT SUPPORT HARTFORD'S TERMINATION

Hartford incorrectly argues that Dr. Hiesiger's Attending Physician Statements on February 27, 2008 and August 6, 2008 (together the "Statements") demonstrate that she can perform the duties of her occupation as a transactional attorney. (Hartford Opp. Br., 4-6). This is based on a misreading of the Statements and the Physical Demands Analysis ("PDA") completed by Milbank. The Statements indicate that Young can at most sit for 2 hours at one time (376), while the PDA requires that a transactional attorney be able to sit for 8+ hours at one time (1055). Hartford simply ignores this unbridgeable gap.[1] Furthermore, Hartford consistently omits the restrictions in the Statements, which restrict Young from reaching above the shoulder, waist/desk level, and below waist/desk level to 1-33% of the day. (376, 431). The PDA, however, contains critical requirements to Young's occupation: twisting of head 66-100% [of a work day]; upper extremity ROM [range of motion] 66-100% [of a work day]; and whole

---

[1] Hartford proffers that the PDA permits the ability to "alternate sitting and standing as needed" (Hartford Opp. Br., p. 5), but offers no explanation or medical support for how this could bridge the sizeable gap between 2 hours to 8+ hours, particularly when Young frequently had to attend lengthy meetings and faced deadlines which prevented her from taking breaks.

2

body ROM [range of motion] 66-100% [of a work day]. (1055-56). The restrictions in the Statements demonstrate that Young is incapable of performing her occupation.

Hartford also incorrectly argues that Dr. Hiesiger's records indicate that Young's cervical condition resolved in August 2008. In doing so, they cite to the August 8, 2008 treatment note, which states, "no neck pain." (Hartford Opp. Br., p. 4). This contention should be rejected for several reasons. First, Hartford cites the language out of context. The reference to "no neck pain" is part of a description of Young's headaches, <u>not</u> cervical condition. This is known beyond peradventure because it is part of a diagram that specifically and only pertains to Young's headaches, indicating among other things the places she feels pain. (341). Second, even if, *arguendo*, the language "no neck pain" related to Young's cervical condition, it cannot reasonably be interpreted as indicating that she "fully recovered" from her cervical condition as Hartford concludes. (*Id*.). Young had multiple surgeries, including fusions and the insertions of hardware. Her condition is permanent. The reference to "no neck pain" is at most a temporal reference of a condition that waxes and wanes. This is demonstrated by the fact that Young was required to have additional surgery on her cervical spine on December 9, 2008.[2] (66-67). Third, Hartford itself did not raise it as being significant when it denied Young's appeal. (210).

Hartford also misunderstands Young's argument regarding the identical nature of the Statements—the February 27, 2008 and August 6, 2008 Statements prescribe identical restrictions and limitations. Young does not assert that Hartford "is bound to pay benefits in perpetuity;" rather, it is Young's position that the Court should exert increased scrutiny because

---

[2] Hartford asserts that there is no record of the surgical procedure Young underwent on December 9, 2008. (Hartford Opp. Br., p. 21) This is reminiscent of the murderer who killed his parents and then asked for leniency on the ground of being an orphan. There is no record of the December 9, 2008 surgical procedure in the administrative record because <u>Hartford</u> refused to review this information on January 6, 2009. (66-67).

3

Hartford's determination based ostensibly on the August 6, 2008 Statement was not based on a change in circumstances.  *See, Miller v. American Airlines, Inc.*, 2011 U.S. App. LEXIS 1462, *21 (3rd Cir. Jan. 25, 2011) ("An administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position is an irregularity that counsels towards finding an abuse of discretion."); *Levitian v. Sun Life and Health Ins. Co. (U.S.)*, 2011 U.S. Dist. LEXIS 14113, *13-14 (S.D.N.Y. Feb. 9, 2011) (finding a determination to be arbitrary and capricious, when *inter alia*, the insurer reversed a prior determination "without any change of circumstances"…"solely on factors not given weight or even considered as relevant during the original evaluation."); (Young Opp. Br., pp. 11-12).

### B. DR. TOPPER DOES NOT SUPPORT HARTFORD'S TERMINATION

Given the disparity between Young's "sedentary" occupation and Dr. Topper's opinion that Young only had "light" capacity, Hartford seeks to resuscitate Dr. Topper's opinion by citing a Social Security Administration ("SSA") regulation, which specifies the following rule of thumb, "[t]he functional capacity to perform a full range of light work includes the functional capacity to perform sedentary work as well as light work."  (Hartford Opp. Br., p. 7).

This should be rejected.  First, in *Black & Decker Disability Plan v. Nord*, the Supreme Court stressed the "critical differences between the Social Security disability program and ERISA benefit plans." 538 U.S. 822, 832-34 (2003).  Specifically, the Supreme Court stated that the "[p]resumptions employed in the Commissioner's regulations 'grow out of the need to administer a large benefits system efficiently.'"  *Id.* at 833.  Thus, "[i]n determining entitlement to Social Security benefits, the adjudicator measures the claimants condition against a uniform set of federal criteria." *Id.* at 833.  On the other hand, "[t]he validity of a claim to benefits under an ERISA plan . . . is likely to turn on the interpretation of terms in the plan at issue." *Id.*, *citing*,

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  This is precisely the case here.  In Young's Policy, the proper measure of disability is Young's ability to perform the duties of her <u>own</u> regular occupation.  (14).  By contrast, the SSA must determine whether an individual is unable to perform <u>any</u> gainful activity, which brings into the equation a whole universe of jobs with varying exertional levels (sedentary, light, medium and heavy).  The rule of thumb, therefore, assists the SSA in making a very different determination.

Second, even within the SSA system, the SSA regulation is only a rule of thumb.  This is demonstrated by SSR 96-9p[3], titled, "Determining Capability to do other work—implications of a residual functional capacity for less than a full range of sedentary work," which provides:

> The fact that an individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level.  In unusual cases, some individuals will be able to stand and walk longer than they are able to sit. If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.

Third, it makes perfect sense that an individual who in particular has a low tolerance for prolonged sitting cannot do a sedentary job but can do a job that does not require excessive sitting.  *See, e.g., Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 483-484 (7th Cir. 2009) (finding MetLife's denial of benefits to be arbitrary and capricious where a nurse was able to perform "medium" level work, but not the "sedentary" level work of her regular occupation).

Accordingly, the fact remains that Dr. Topper's report does not support a conclusion that Young could work in her sedentary occupation.  Indeed, putting aside the sedentary/light issue, the restrictions and limitations prescribed by Dr. Topper specifically prevent Young from performing the duties of her occupation as described in the PDA.  Hartford fails to resolve the

---

[3] http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html.

incompatibility between Dr. Topper's restrictions and limitations and the requirements of the PDA: (1) Topper's restriction that, "the claimant's continuous sitting time needs to be restricted to two hours," prevents Young from satisfying the PDA requirement of 8+ hours; and (2) Topper's restrictions, that Young can sit for "8 hours a day 5 days a week. . .as long as she is <u>not exposed to sustained neck posturing and repetitive flexion/extension</u>" and "[Young] can perform repetitive neck flexion and extension and sustained neck postures only occasionally, less than two and a half hours a day," prevent Young from satisfying the PDA requirement that she be able to twist her head, and have range of motion of her upper extremities and whole body 66-100% of a work day.[4] (See Young Br., p. 12-13; Young Opp. Br., pp. 10-11; 321-22; 1055-56).

II. <u>HARTFORD FAILED TO PROVIDE YOUNG WITH A FULL AND FAIR REVIEW</u>

Summary judgment should be granted in favor of Young because Hartford failed to provide Young with a full and fair review. (See Young Br., pp. 10-11, 17-19; Young Opp. Br., p. 14).

A. <u>HARTFORD IMPROPERLY JUSTIFIES ITS TERMINATION OF YOUNG'S BENEFITS WITH NEW REASONS FOR DENIAL</u>

Defendants are precluded from raising new reasons for denial for the first time in litigation. *Curry v. American International Group*, 579 F. Supp.2d 413, 422 (S.D.N.Y. 2008), *aff'd*, 341 Fed. Appx. 731 (2d Cir. 2009).

Hartford's opposition brief is replete with new reasons to justify its termination. <u>None</u> were given to Young during the claim process. By proffering them now, Hartford tacitly admits the weakness of the reasons that it did specify. Among the new reasons are the following:

1. <u>Equating Working Part-Time with Performing Material Duties of Her Occupation</u>: Hartford asserts that Young returned to work and was able to perform the material

---

[4] According to the PDA, Young's average workday is 12 hours. (1055).

and substantial duties of her occupation for nearly two years. (Hartford Opp. Br., pp. 3-4, 8). But, working part-time with extensive ergonomic equipment changes is not performing the material duties of Young's regular occupation. Young's regular occupation required 12 hours per day and work on weekends as needed. (1055). Moreover, Milbank indicated that her job could not be accommodated. Id. At all times since returning to work part-time, Young was disabled from her regular occupation because she did not have the sitting tolerance required to work full-time, *i.e.*, 8+ hours at one time. Id.

      2.    <u>Failure to Provide Proof</u>: Hartford asserts that Young failed to provide proof, including: (a) missed days of work prior to her termination; and (b) a log documenting the nature, location, frequency or extent of her migraines. (Hartford Opp. Br., pp. 8-11, 13). Hartford, however, did not mention that any of this was relevant in either its termination letter or in its appeal denial letter. Certainly, if Hartford had asked for and indicated the importance of this information, Young would have endeavored to provide it.

      3.    <u>Young Was Released to Swim with a Snorkel</u>: Hartford takes the fact that Young asked her doctor about specific exercise activities such as swimming with a snorkel and riding a stationary bike (475) and draws unscientific and unsupported conclusions from it. (Hartford Opp Br., p. 4). Hartford asserts, "it is therefore illogical to argue (as Young does) that she was physically able to engage in such physically strenuous activity, but not able to sit and work at a desk." (*Id.*). But, the way that Young intended to swim and bike was not two legs of a triathlon as assumed by Hartford. Rather, Young was seeking a method of exercise that she could do given her cervical condition. Swimming with a snorkel does not require you to turn your head (which she could not do) and riding a stationary bike is low impact. Again, Young's problem was with prolonged sitting, not more activity.

7

B. HARTFORD DID NOT GATHER READILY AVAILABLE INFORMATION

Young argued that Hartford failed to gather many pieces of evidence that were readily available. (See Young Brief, p. 10-11, 17). In opposition, Hartford asserts that it had no duty to investigate and that the complete burden was on Young to provide documentation that she wanted reviewed. (Hartford Opp. Br., pp. 17-18). Hartford, however, confuses plaintiff's burden of proof with Hartford's duty as an ERISA claims fiduciary with higher-than-marketplace duties. Moreover, Hartford forgets its own internal procedures which require Appeal Specialists to gather such readily available evidence.

Indeed, ████████████████████████████████████
████████████ As a performance objective it provides, ████████████
████████████████████████████████████████████████████
████████████████████████ (Ex. C., p. 1365). Therefore, Hartford's blanket denial of responsibility is contrary to its own internal procedures. *See, e.g., Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 776 (8th Cir. 2009) (Unum's failure to follow its own claims-handling procedures indicated an abuse of discretion). Hartford never explains why the August 8, 2008 treatment note was not needed before the initial termination; and why Dr. Mauskop's treatment notes, transcribed notes of Dr. Hiesiger and a peer to peer discussion with Dr. Mauskop were not needed for the appeal determination.

III. HARTFORD'S CONFLICT OF INTEREST WAS OF GREAT IMPORTANCE

Hartford asserts that Young's criticism of the Appeal Specialist for racing to meet production quotas is without merit. Hartford asserts that meeting production quotas was ████
████████████████████████████████████████████████████
████████████████████████ (Hartford Opp. Br., pp. 22-23). But, Hartford's argument is

without merit. The Appeal Specialist's focus ██████████████████████

████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████

████████████████████████████████████

(Ex. C, p. 1365) (emphasis added). Young does not argue that this fact alone conclusively demonstrates that the Appeal Specialist rushed through Young's appeal so that it could be completed in 2008, but the circumstantial evidence provides a strong basis for being skeptical of the way that the Appeal Specialist handled Young's claim:

- Failure to obtain any medical records and opinion from Dr. Mauskop (318, 322).

- Refusal to consider the information Young sought to provide on January 6, 2009, even though the 180 day period to perfect her appeal had not run.[5] (66-67).

- Failure to notice that Dr. Topper's report only supported termination if Young had a "light" occupation, where in fact she had a "sedentary occupation." (321).

- Failure to resolve the discrepancy between the restrictions and limitations prescribed by Dr. Topper (321, 322) with the description of Young's occupation in the PDA (1055-56).

- Failure to ask for transcriptions of Dr. Hiesiger's handwritten treatment notes after Dr. Topper indicated in his report that he could not read them. (320).

- Refusal to consider Dr. Mauskop's April 17, 2009 report. (66).

Hartford also asserts that the number of times that Hartford uses Dr. Topper is not important for purposes of assessing the conflict of interest issue because the Supreme Court in *Black & Decker*, indicated that both a treating doctor and a consultant have interests to support their respective sides. (Hartford Opp. Br., p. 23). This argument is without merit.

---

[5] Young had until February 23, 2009 to perfect her appeal. This date was calculated using the date of the initial denial letter (August 27, 2008 + 180 days). However, Young did not receive actual notice of the initial denial until September 2008.

First, *Black & Decker* was decided before *Glenn* and the *dicta* cited by Hartford related to a different issue—whether or not to institute a treating physician rule in the context of ERISA.

Second, the issues of bias of treating and consulting physicians are both important but for different reasons.  Treating physician bias is important for determinations of disability and nothing stops insurers from inquiring into this issue during the claim process.  Here, Hartford did not believe the issue important enough to so inquire.  Hartford therefore had its opportunity and chose not to use it.  By contrast, how many times Hartford uses Dr. Topper is directly relevant to whether he is "independent."  Hartford repeatedly refers to him as "independent" throughout its brief.  The Second Circuit has indicated that using an "independent" physician is an important step that an insurer can take to neutralize its conflict.  *See Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 139-41 (2d Cir. 2010).  As a result, courts have recognized the importance of this issue.  (See Young Br., pp. 22-23).

The fact that Dr. Topper received over $202,000 from Hartford for peer reviews completed from 2008-2009 (Young Br. pp. 22-23), evidences that he is not "independent" as represented and therefore the Court should be skeptical of his review.

## CONCLUSION

For all of the foregoing reasons, and those specified in Young's memorandum of law in support of summary judgment, this Court should grant summary judgment in favor of Young.

Dated: New York, New York
       March 11, 2011

                                               Respectfully submitted,

                                               /s/ Scott M. Riemer
                                               Scott M. Riemer (SR5005)
                                               Riemer & Associates LLC
                                               60 East 42nd Street, Suite 1750
                                               New York, New York 10165
                                               (212) 297-0700

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 11, 2011 I served a true and complete copy of the foregoing Reply Memorandum of Law in Further Support of Summary Judgment by transmitting the same by electronic mail to the following individuals at the e-mail addresses indicated:

>Michael H. Bernstein
>Sedgwick Detert Moran & Arnold LLP
>125 Broad Street, 39th Floor
>New York, New York 10004-2400
>Tel.: (212) 422-0202
>Fax: (212) 422-0925
>*Attorneys for Defendant*
>*Hartford Life Group Insurance Company*

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on March 11, 2011.

Dated: New York, New York
      March 11, 2011

>    /s/Scott M. Riemer
>Scott M. Riemer