UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUSAN A. YOUNG,                                             Civ. Act. No.: 09-CV-9811 (RJH)

                        Plaintiff,

      -against-

HARTFORD LIFE AND ACCIDENT                                  DOCUMENT
INSURANCE COMPANY and CONTINENTAL                           ELECTRONICALLY FILED
CASUALTY COMPANY,

                      Defendants.
------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                                                SEDGWICK, DETERT, MORAN & ARNOLD LLP
                                                Attorneys for Defendants
                                                Hartford Life And Accident Insurance Company and
                                                Continental Casualty Company
                                                125 Broad Street, 39th Floor
                                                New York, New York 10004-2400
                                                Telephone: (212) 422-0202
                                                Facsimile:  (212) 422-0925
                                                [SDMA File No. 02489-000044]

*Of Counsel*
    Michael H. Bernstein
    John T. Seybert

NY/656090v1

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

    POINT I

    HARTFORD'S DENIAL OF YOUNG'S CLAIM FOR CONTINUING
    LTD BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN
    THE ADMINISTRATIVE RECORD ................................................................................ 1

        A.    Substantial Evidence Supports Hartford's Determination That Young
             Was Not Disabled By Her Cervical Spine Condition As Of August 30, 2008 ............. 1

        B.    Substantial Evidence Supports Hartford's Determination That Young
             Was Not Disabled By Her Purported Migraines As Of August 30, 2008 ..................... 4

    POINT II

    HARTFORD PROVIDED YOUNG WITH A FULL AND FAIR REVIEW .............................. 6

    POINT III

    HARTFORD'S DETERMINATION WAS NOT INFLUENCED
    BY A CONFLICT OF INTEREST ...................................................................................... 6

    POINT IV
    YOUNG'S ARGUMENT THAT HARTFORD SHOULD BE
    SANCTIONED UNDER RULE 37(c)(1) IS MERITLESS ................................................ 9

CONCLUSION .......................................................................................................................... 10

CERTIFICATE OF SERVICE ........................................................................................ ATTACHED

## **TABLE OF AUTHORITIES**

Page(s)

### Cases

*Durakovic* v. *Building Service 32 BJ Pension Fund*,
  609 F.3d 133 (2d Cir. 2010) ..................................................................................................7

*Finley* v. *Hartford Life And Accident Insurance Co* ....................................................................7

*Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*,
  637 F. Supp. 2d 132 (E.D.N.Y. 2009) *aff'd* No. 09-3882-CV, 2010 WL 3393758 (2d Cir. Aug. 30, 2010) ....6

*Gessling* v. *Group Long Term Disability Plan For Employees Of Sprint*,
  693 F.Supp.2d 856 (S.D. Ind. 2010) ......................................................................................7

*Hagopian* v. *Johnson Fin. Group, Inc.*,
  No. 09-C-926, 2010 WL 3808666 (E.D. Wis. Sept. 23, 2010)..............................................7

*Hobson* v. *Metropolitan Life Ins. Co.*,
  574 F.3d 75 (2d Cir. 2009) ...............................................................................................7, 10

*Magee* v. *Metropolitan Life Ins. Co.*,
  632 F. Supp. 2d 308 (S.D.N.Y. 2009)....................................................................................5

*Mugan* v. *Hartford Life And Acc. Ins. Co.*,
  No. 09 CV 6711(NRB), 2011 WL 291851  (S.D.N.Y. Jan. 20, 2011) ...............................2, 7

*Ramstine* v. *Hartford Life Ins. Co.*,
  No. 08-cv-942, 2010 WL 3718860 (N.D.N.Y. Sept. 14, 2010) .............................................7

*Schnur* v. *CTC Comm. Corp. Group Disability Plan*,
  No. 05 Civ. 3297(RJS), 2010 WL 1253481  (S.D.N.Y. Mar. 29, 2010) ...............................5

### Statutes

FED. R. CIV. P. 26(a)(1)(A)(i) ......................................................................................................10

FED. R. CIV. P. 26(a)(1)(B)(i) ......................................................................................................10

FED. R. CIV. P. 37(c)(1) .................................................................................................................9

### Treatises

DORLAND'S MED. DICT., p. 1158 ...................................................................................................5

STEDMAN'S MED. DICT., p. 1117 (26th ed. 1995) .........................................................................5

**PRELIMINARY STATEMENT**

Defendants, Hartford Life And Accident Insurance Company ("Hartford") and Continental Casualty Company ("CCC"), submit this reply memorandum of law in response to Plaintiff Susan A. Young's ("Young") opposition to Defendants' motion for summary judgment and in further support of that motion.

**ARGUMENT**

**POINT I**
**HARTFORD'S DENIAL OF YOUNG'S CLAIM FOR CONTINUING LTD BENEFITS WAS BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD**

Young concedes that the Plan granted Hartford discretionary authority to determine her claim for LTD benefits. (Young's Memorandum of Law in Opposition dated February 25, 2011, Doc. No. 44 ("Opp."), pp. 7, 9). Therefore, this Court should not disturb Hartford's determination unless it finds that it was not based on substantial evidence in the administrative record.[1] Young argues that Hartford's determination was arbitrary and capricious because the medical records in the administrative record show that she was disabled by her cervical condition and migraine headaches. For the reasons discussed below, Young's challenges to Hartford's decision-making are meritless:

**A.   Substantial Evidence Supports Hartford's Determination That Young Was Not Disabled By Her Cervical Spine Condition As Of August 30, 2008**

Hartford terminated Young's LTD benefits because there was no objective evidence in the record demonstrating that she remained impaired by her cervical spine condition as of August 30, 2008. Notably, Young had been working at least twenty hours per week at her regular occupation as a transactional attorney for nearly two years prior to August 30, 2008 after being released to return to work by her treating physician, Roger Ostdahl, M.D., in September 2006 (0507).[2] A May 16, 2007 cervical spine MRI Report showed progressive fusion across the intervertebral spaces and that Young's spinal condition was stable as of that date. (0477). Young did not submit

---

[1] Hartford is the claim fiduciary that decided Young's claim and is the successor-in-interest to CCC. (*See* Defendants' Memorandum of Law In Support of Their Motion dated February 11, 2011, p. 2.). Also, Young makes no argument against CCC and focuses exclusively on Hartford. As such, CCC is not a proper party to the litigation and summary judgment dismissing Young's claims against it should be granted.

[2] The numbers in parentheses refer to the Bates Stamped pages starting with the prefix "YOUNG 00__," which are annexed to the Declaration of Juan Mendez, dated February 10, 2011, Doc. No. 25 ("Mendez Dec.") as Exhibits "A" through "C."

1

any objective medical proof generated after May 16, 2007 demonstrating that her cervical spine condition prevented her from performing the material and substantial duties of her occupation after that date. To the contrary, all the medical proof submitted, together with the fact that she actually was working at this time, demonstrated that she could perform her job on a full-time basis as of August 30, 2008.

Young argues that Hartford failed to consider that she had surgery to treat her condition in 2005 and 2006, and that she received LTD benefits while recuperating from these procedures, as evidence that she remained disabled by this condition on August 30, 2008. (576-78). But this argument ignores Young's subsequent treatment records showing that she had completely recovered by August 30, 2008. (0477). Young also identifies nerve block injections and radiofrequency lesioning procedures she received as further evidence that she remained disabled by this condition. But the record reflects that Young had this treatment while she was still working and neither Young nor her treating physicians provide any reasons why she was prevented from working as a result of these procedures. In fact, Young ignores the fact that at the time her benefits were terminated, she was only treating with Dr. Hiesiger, who found that she had "no neck pain," could sit for two hours at a time up to twelve hours per day; could stand for two-hour periods up to four per day; and could walk for two-hour periods up to four hours per day. (0341, 0376). Moreover, there is no evidence that Young was receiving any treatment for her cervical condition after the radiofrequency lesioning procedure that she received in April 2008, and consistent with Dr. Hiesiger's notes, his prior APS forms, and his October 6, 2008 letter, he told Dr. Topper during their peer-to-peer discussion that Young's cervical condition was no longer the cause of her disability. (0318).

Young also argues that her cervical condition caused her to be more accident prone and susceptible to further injuries. (Opp., p. 3). Notably, Young never made such a claim during her claim review and appeal, and none of her doctors ever submitted any proof to support this assertion. Consequently, Young's newly minted rationale should not be considered as a basis for finding Hartford's decision-making improper. *See Mugan* v. *Hartford Life And Acc. Ins. Co.*, No. 09 CV 6711(NRB), 2011 WL 291851 *9 (S.D.N.Y. Jan. 20, 2011). Furthermore, Young cannot point to any "accident" she relates to her cervical condition after August 17, 2007, which was a year before Hartford terminated benefits.

Young asserts that, despite the substantial evidence in the administrative record supporting Hartford's determination that she was no longer disabled by her cervical spine condition as of August 30, 2008, it could not reasonably terminate her benefits at that time because it had previously decided to continue paying her benefits after receiving Dr. Hiesiger's February 27, 2008, which was substantially similar to his August 6, 2008 APS. (Opp., pp. 5-6). Both APSs state that Young: (i) could sit for two hours at a time up to twelve hours per day; (ii) could stand for two-hour periods up to four per day; and (iii) could walk for two-hour periods up to four hours per day. But Young's argument is misplaced for several reasons, including: (i) Hartford never found that the limitations listed on the February APS demonstrated that she was unable to perform the material duties of her regular occupation; (ii) there is no legal support for Young's argument that Hartford is bound to pay benefits in perpetuity because it had previously awarded benefits; and (iii) Young's portrayal of Hartford's initial claim decision being solely based on a single sheet of paper in the August APS is incorrect. (*See* Defendants' Opp., p. 6, Doc. No. 30).

Young cites two cases that she claims support her argument that Hartford's decision was arbitrary and capricious because it purportedly failed to consider her actual occupation. (Opp., pp. 10-11). These cases stand for the unremarkable proposition that a claims fiduciary must consider a claimant's job requirements when considering whether she is disabled from her occupation. Here, Young does not identify any requirement of her regular occupation that Hartford failed to consider. Instead, she claims that Dr. Hiesiger's restrictions, as agreed to by Dr. Topper, demonstrate that she could not perform her job because it supposedly required her to sit for *eight continuous hours without ever getting up from her chair*. (Opp., p. 7). Not only is this argument absurd, but it is also based on an incorrect reading of the Physical Demands Analysis ("PDA") completed by her employer, Milbank, Tweed, Hadley McCloy LLP ("Milbank"). The PDA does *not* say that associates are required to sit for eight continuous hours. Rather, it notes that associates can change their position as much as needed. (0973). Consequently, Young's suggestion that lawyers at Milbank, unlike any other lawyers in the profession, are virtually chained to a chair for eight continuous hours with no ability to change position, or even go to the bathroom, is nonsensical and only serves to highlight the lack of any compelling proof of her claim. The record demonstrates that Hartford considered all of Young's occupational requirements, including the fact that she had been working at her position in

3

a part-time capacity for nearly two years prior to termination of her benefits. (0211). Hartford specifically noted on appeal that Dr. Hiesiger's latest APS indicated that her "restrictions and limitations were consistent with sedentary function." (Id.). Hartford also noted that Dr. Topper opined that Young should be "capable of light level of work on a full-time basis, with lifting limited to 20 lbs. occasionally and 10 lbs. frequently; continuous sitting time limited to 2 hours, can perform repetitive neck flexion and extension and sustained neck posture only occasionally, for up to 2 ½ hours a day." (0212). Young does not identify any job requirement listed in the PDA that she was unable to perform within these restrictions or that was not remedied by the accommodations she indisputably received, including her ergonomic chair that provided support for her neck. (*See also* Defendants' Opp., Doc. No. 30, pp.7-8).

B. **Substantial Evidence Supports Hartford's Determination That Young Was Not Disabled By Her Purported Migraines As Of August 30, 2008**

Hartford also properly concluded that Young's subjective complaints of migraine headache pain were insufficient proof to demonstrate that she was prevented by this condition from performing the material and substantial duties of her occupation as of August 30, 2008. The Plan *requires* that participants provide "[o]bjective medical findings which support Your Disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s)." (0026). In support of her claim that she was disabled by migraine headaches, Young only submitted her subjective complaints, which she provided via telephone calls and through the notes of her treating neurologist, Dr. Hieseger, who simply recorded these complaints. Young also provided her own theory as to the cause of the headaches, which was the radio frequency lesioning procedure in April 2008. But Dr. Hiesiger specifically stated that this procedure would not cause her headaches. (0318, 0340). Furthermore, Dr. Topper, the independent board certified neurologist who reviewed Young's medical records, agreed with Dr. Hiesiger on this point. (0318). Thus, Young's subjective complaints of migraine pain could not be explained by any recognized medical cause.[3]

---

[3] Young offered in support of her summary judgment motion, a copy of a letter from Alexander Mauskop, M.D. dated April 17, 2009, which is the subject of a motion to strike because it is outside of the administrative record and was never disclosed in discovery. (Doc. Nos. 49-51). The April 17, 2009 letter stated that, in general trauma from a lesioning procedure was *possible* and *might* be an explanation for her complaints, but provides no explanation for the medical causation in her case. To the contrary, both Drs. Hiesiger and Topper noted that the location of the

4

Importantly, there is not a single objective test identifying the cause, pattern, frequency or intensity of Young's migraines, which is required by the Plan. (0026). Young did not even provide a headache log, which would have at least provided some information about frequency, severity and location of the headaches in order for Hartford to evaluate her subjective complaints. Similarly, Young failed to provide any test results showing how her headache pain actually interfered with her ability to perform the material duties of her regular occupation. *See Schnur* v. *CTC Comm. Corp. Group Disability Plan*, No. 05 Civ. 3297(RJS), 2010 WL 1253481, *14 (S.D.N.Y. Mar. 29, 2010); *Magee* v. *Metropolitan Life Ins. Co.*, 632 F. Supp. 2d 308, 318 (S.D.N.Y. 2009). Thus, there is a complete lack of any objective proof to support Young's claims of disability due to migraine headaches.[4] (0340).

Young next challenges Hartford's argument that migraines are not a condition resulting in a continuing disability under the Plan. (Opp. p. 13). Initially, Young argues, without any medical or legal support, that migraines are continuously disabling. (*Id.*). But even the common definition of the term "migraine" defines it as "periodic"; i.e. not continuous. *See* STEDMAN'S MED. DICT., p. 1117 (26th ed. 1995); DORLAND'S MED. DICT., p. 1158. Additionally, while Young appears to argue that a migraine can be continuous, she provides no evidence that this was so in her case. In fact, Dr. Hiesiger noted her migraines to be "intermittent." (0342). Further, to the extent there is any information in the record on this point, it shows that Young complained of periodic migraine pain starting in May 2008 but that she continued to work until she was laid off on August 29, 2008. (0378-81). Her subjective complaints of migraine pain only increased after she stopped working and her benefits were terminated. (0339-47). These facts do not support a finding that Young's purported migraines were continuous. Lastly, while Young claims that Hartford did not consider the frequency of her headaches complaints when it decided her claim, this is demonstrably false. Juan Mendez ("Mendez"), the Hartford Appeals Specialist, specifically noted that Young's headache complaints were "recurrent"; i.e., not continuous, and that "no specific medical findings are

---

lesioning procedure in this case would not result in symptoms in the areas that Young identifies as the location of her migraine pain. (0318, 0340-42).

[4] Young faults Hartford for noting that her headache complaints arose at the same time she learned that Milbank intended to lay her off from work. (Young Opp., p. 5). But it is not improper to note that Young's Complaint provides an alternate reason for the sudden onset of her subjective complaints of migraine pain in May 2008 since she alleges that she learned on April 4, 2008 that she was being laid off effective August 30, 2008. (Complaint, ¶48). Young also claimed that anesthesia wore off during the procedure and that she was traumatized, which is not noted by Dr. Hiesiger anywhere in his operation report. (*Compare* 0080 *with* 0383-85).

documented to support a particular impairment and/or loss of function during such period of time." (0069, 0212-13). Thus, Hartford considered all of Young's self-reported subjective complaints but found that they did not support her claim that she was continuously disabled by migraine pain. (0026).

## POINT II
## HARTFORD PROVIDED YOUNG WITH A FULL AND FAIR REVIEW

Defendants respectfully refer the Court to the arguments in POINT II in their Opposition (Doc. No. 30).

## POINT III
## HARTFORD'S DETERMINATION WAS NOT INFLUENCED BY A CONFLICT OF INTEREST

Hartford submitted unrebutted admissible proof detailing the active steps it takes to promote accuracy and "wall off" financial departments from its claim and appeals decision-making departments. Specifically, the Luddy Declaration (Doc. No. 27) explains that neither Ability Analysts nor Appeals Specialists have any financial incentive to approve or deny a claim and that neither is responsible for reporting to the financial units at Hartford. (*Id.*, ¶¶8, 10-15). Luddy also explained that an Appeals Specialist is charged with determining the claim without discussing the merits with the initial claim reviewer and is evaluated based the accuracy of his decision-making. (Luddy Dec., ¶¶3-7, 9). Mendez, the Appeal Specialist who issued Hartford's final determination on Young's claim, confirmed in his own Declaration (Doc. No. 25) that all of these steps were followed in Young's case. (Mendez Dec., ¶¶6-10). In cases such as this, where an insurer has demonstrated its active steps to promote accuracy in its decision-making and reduce the influence of any financial conflict of interest, the Court may find that the conflict of interest factor is reduced to the "vanishing point." *See Fortune* v. *Long Term Group Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 144 (E.D.N.Y. 2009) *aff'd* No. 09-3882-CV, 2010 WL 3393758 (2d Cir. Aug. 30, 2010) (*See also* Def. Opp., p. 22).

Young incorrectly argues that Defendants seek to rely on evidence developed in other actions to prove that Hartford took steps in her case to reduce the influence of conflict of interest. (Opp., p. 17). Young's argument is inaccurate, however, because Defendants provided proof in admissible form and specific to this action in support of their motion. (Luddy Dec., Doc. No. 27; Mendez Dec., Doc. No. 25). This proof is similar to the proof submitted to five other District Courts in similar cases, and which the Second Circuit also found to be compelling

on this point. (Def. Opp., p. 22); *see also Ramstine* v. *Hartford Life Ins. Co.*, No. 08-cv-942, 2010 WL 3718860, *7 (N.D.N.Y. Sept. 14, 2010). While Young calls this a "particularly perilous way to make factual findings," she fails to heed her own concerns on this point when she cites to three cases that did not involve submissions of declarations similar to the ones provided by Luddy and Mendez in this action. Further undercutting Young's hollow complaints about Defendants' competent evidentiary proof is the fact that she improperly cites to the U.S. District Court decision in *Finley* v. *Hartford Life And Accident Insurance Co.* that was *reversed* by the U.S. Court of Appeals for the Ninth Circuit, which held that "[t]he district court erred in assigning controlling weight to the conflict of interest factor because . . . the evidence in this case does not indicate that the conflict 'tainted the entire administrative process.'" 2010 WL 4116636, *1 (9th Cir. Oct. 19, 2010). Indeed, Young's attempt to argue that conflict of interest should be given greater weight by string citing groups of factually dissimilar cases has been repeatedly rejected. *See Mugan*, 2011 WL 291851, at *11, n. 9; *Gessling* v. *Group Long Term Disability Plan For Employees Of Sprint*, 693 F.Supp.2d 856, 872 (S.D. Ind. 2010); *see also Hagopian* v. *Johnson Fin. Group, Inc.*, No. 09-C-926, 2010 WL 3808666, *8 (E.D. Wis. Sept. 23, 2010).

It is also a telling indictment of Young's tactics on this motion that she resorts to attaching documents from an unrelated case in order to provide "support" for her meritless conflict arguments. Young requested and received from Hartford voluminous documents in discovery *specifically related to the performance evaluations and compensation information for the Ability Analyst and Appeals Specialist who actually decided her claim*, as well as current organizational charts. In addition, in *this* case, Young deposed both Mendez and Ruthledge Crump ("Crump"), the LTD Director for Hartford's Maitland, Florida claim office. (Declaration or Michael H. Bernstein, dated March 11, 2011, Ex. "A"). Almost none of this material, however, has been submitted to the Court in support Young's arguments on this motion because none of it supports her baseless claim that conflict of interest influenced Hartford's decision-making. The Second Circuit has ruled that "[n]o weight is given to a conflict in the absence of any evidence that that the conflict actually affected the administrator's decision." *Durakovic* v. *Building Service 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010) (citing *Hobson*, 574 F.3d at 83). The fact that Young ignores the documents and deposition testimony that she obtained in discovery in this matter, and instead purports to rely on outdated,

7

irrelevant material from another case concerning individuals who had nothing to do with her claim, confirms that she lacks any basis to argue that conflict of interest actually affected Hartford's determination of her claim.[5]

Young's reliance on documents produced in an unrelated matter regarding Rehabilitation Clinical Case Managers ("RCCM") to argue that Hartford was conflicted in its decision-making on her claim is particularly egregious because she purposefully *ignores* the testimony given by a Hartford witness *in this case* that undercuts this baseless argument. (Opp., pp. 15-17). While Young claims that RCCM's are encouraged to return people to work ("RTW") and that this term is a "euphemism" Hartford uses for ceasing payments of benefits (Complaint, ¶112), this scurrilous assertion is not only false, but was directly refuted by Crump at his deposition, where he explained that RTW involves an RCCM assisting a participant in finding a way to perform her job or another job — not a denial of LTD benefits. (Bernstein Dec., Ex. "A," T. 21:2-8). Moreover, the Plan itself is clear that assisting claimants to return to work is an additional service required by the insurance contract; it is *not* part of the claims review procedure. (0025). In fact, as the administrative record amply demonstrates, Young benefitted from Hartford's efforts to assist her in returning to work — she actually did so on September 28, 2006, due in no small part to the efforts of Hartford's employees. (*See also* Declaration of Jeffrey O'Polka dated February 24, 2011, Doc. No. 46). Notably, Young ignores these facts and also fails to include Crump's deposition testimony on this point, which in and of itself, may be the best evidence of the lack of merit to her conflict of interest arguments.

Young also incorrectly argues that Ability Analysts and Appeals Specialists are not kept separate with respect to the cases they decide because Hartford's Director of Appeals reports to the Assistant Vice-President of Risk Management, who in turn reports to the Vice President of GBD Claims. (Opp., p. 18). This "Rube-Goldberg" argument is, at best, an attenuated stretch based on nothing more than wishful thinking. The record amply demonstrates that the Ability Analyst, Joseph Ross, had *no* communication with Mendez, who ultimately decided Young's appeal. (Mendez Dec., ¶8). Thus, the organizational structure of senior level management is irrelevant to this issue. Young's second argument, that as a result of a "dotted-line" report between Hartford's executives, there is no separation between its claims/appeals department and its financial department, is absurd. The chart she attaches hardly shows that

---

[5] Rather than belabor this point and inflate the record, Defendants will provide copies of all discovery exchanged to the Court for its review at the time of oral argument.

8

Hartford's claims department is connected to its finance department. If anything, it shows that the finance department had a minor reporting duty to the head of the claims department, but otherwise completely fails to raise any issue of fact as to the efficacy of Hartford's "walling-off" procedures that both Luddy and Mendez describe in their Declarations. Notably, this very argument was specifically rejected by Judge Buchwald in *Mugan*, 2011 291851, at *11.

### POINT IV
### YOUNG'S ARGUMENT THAT HARTFORD SHOULD BE SANCTIONED UNDER RULE 37(c)(1) IS MERITLESS

Young argues that the Luddy Declaration should be stricken because he was not identified in Hartford's initial disclosures as a person likely to have personal knowledge of discoverable information that Hartford may use to support its defenses. (Opp., pp. 18-19).[6] This argument is outrageous because Young asks this Court to strike a Declaration that her counsel has admittedly seen several times before in other matters and admittedly expected to see in this case. *Cf. Mugan*, 2011 WL 291851, *11. Indeed, Young's suggestion that she did not have sufficient notice of Luddy or the content of his Declaration is simply not credible since her counsel asked each deponent about Luddy at their respective depositions. (Affirmation of Scott M. Riemer, dated Feb. 10, 2011, Doc. No. 34, Ex. "D," T. 13, 24-25; Bernstein Dec., Ex. "A," T. 58). Remarkably, Young makes this meritless sanctions argument after her counsel represented in open court that he knows of Luddy and his Declarations in other matters, but that he did not want to take his deposition in this case. At a hearing before U.S. Magistrate Judge Katz on September 2, 2010 (more than three months before discovery closed), Young's counsel explained why he wanted the deposition of Crump, not Luddy, stating:

> In these cases, lately Hartford has been submitting an affidavit from an individual named Bruce Luddy, who is head of the appeals unit. In that affidavit which was submitted in the *Fortune* case and in other cases that I have dealt with, they talked about their procedures and how they have set up all these Chinese walls, blah-blah-blah, to minimize the conflict. My point of taking this guy's deposition, and I know he wasn't personally involved in my case, was so that I have a way to probe into Hartford's procedures in doing these cases other than having their affidavit from Mr. Luddy, who is essentially their professional witness on these issues now. Here is somebody who actually does this job and will know all of the procedures. I'd like to question him on exactly what type of procedures they have in place to make sure they minimize their conflicts. He is the individual who will have the broadest knowledge of that in the particular office that decided this claim.

(Bernstein Dec., Ex. "B," T. 23-24). Indeed, Hartford offered to produce Luddy for deposition but Young's

---

[6] This request is procedurally improper since it is not made by motion. FED. R. CIV. P. 37(c)(1).

9

counsel rejected that offer. (Bernstein Dec., Ex. "B," T. 29). Importantly, Young's counsel attached to his own motion Luddy's Declaration from the *Fortune* case, and he specifically stated "the plaintiff there didn't do a good job in trying to contest that, the court made a finding that Hartford has in place these active steps." (*Id.*, Ex. "B," T. 29). Given the foregoing, it is completely improper for Young to argue that the Luddy Declaration should be stricken on the grounds that she had no notice of him as a potential witness in this case.

Furthermore, Young's procedural argument is wrong on the law because Defendants met their disclosure obligations under Federal Rules of Civil Procedure. First, Rule 26(a) disclosures do not apply to actions, such as the matter *sub judice*, that require administrative record reviews by the Court. FED. R. CIV. P. 26(a)(1)(B)(i). Second, plaintiff has the burden of proof to show how conflict of interest affected Hartford's decision-making on her claim, *see Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). Accordingly Defendants did not have an obligation to disclose the identity of rebuttal witnesses for an issue on which they do not bear the burden of proof. FED. R. CIV. P. 26(a)(1)(A)(i). Third, Rule 26(a)(1) is entitled "Initial Disclosures," which presumes that some additional disclosure will occur after these disclosures are made. Clearly, subsequent events demonstrate Young's notice of Luddy, regardless of any purportedly deficiency in Hartford's initial disclosure.

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendants' initial Memorandum of Law in support of this motion, as well as the reasons set forth in Defendants' opposition to Young's motion for summary judgment, this Court should grant Defendants' motion for summary judgment, dismissing Young's Complaint.

Dated: New York, New York
      March 11, 2011

    Respectfully Submitted,
    s/_____
    Michael H. Bernstein (MB 0579)
    John T. Seybert (JS 5014)
    SEDGWICK, DETERT, MORAN & ARNOLD LLP
    Attorneys for Defendants
      *Hartford Life And Accident Insurance Company* and
      *Continental Casualty Company*
    125 Broad Street, 39th Floor
    New York, New York 10004-2400
    Telephone: (212) 422-0202

## CERTIFICATE OF SERVICE

I, JOHN T. SEYBERT, hereby certify and affirm that a true and correct copy of the attached **DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was served via ECF on this 11th day of March, 2011, upon the following:

> Scott M. Riemer Esq.
> Riemer & Associates
> 60 East 42nd Street, Suite 1750
> New York NY 10165
> Business E-mail:  sriemer@riemerlawfirm.com

s/
JOHN T. SEYBERT (JS 5014)

Dated:   New York, New York
         March 11, 2011

NY/656090v1